UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

SENIOR CARE GROUP, INC.,                            Case No. 8:17-bk-6562-CPM

                                                    *Jointly Administered with:*

KEY WEST HEALTH AND REHABILITATION
CENTER, LLC,                                         Case No. 8:17-bk-06580-CPM

SCG BAYWOOD, LLC,                                    Case No. 8:17-bk-06563-CPM

SCG GRACEWOOD, LLC,                                  Case No. 8:17-bk-06564-CPM

SCG HARBOURWOOD, LLC,                                Case No. 8:17-bk-06572-CPM

SCG LAURELLWOOD, LLC,                                Case No. 8:17-bk-06576-CPM

THE BRIDGES NURSING AND
REHABILITATION, LLC,                                 Case No. 8:17-bk-06579-CPM

        Debtors.
_____/

**NOTICE OF FILING REDLINE OF BID PROCEDURES
ORDER TO AGREED AMENDED BID PROCEDURES ORDER**

        NOTICE IS HEREBY GIVEN of the filing, as an attachment hereto, of the redline version

of the Bid Procedures Order entered by the Court on November 17, 2017 (Doc. No. 228) against

the Agreed Amended Bid Procedures Order entered on November 29, 2017 (Doc. No. 244).  This

Notice and attachment are also posted on the website of Stichter, Riedel, Blain & Postler, P.A., at

www.srbp.com.

　/s/ Elena Paras Ketchum
Elena Paras Ketchum (FBN 0129267)
Stichter Riedel Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida　33602
Telephone: (813) 229-0144
Fax:　(813) 229-1811
Email: eketchum@srbp.com
Attorneys for Debtor

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Notice of Filing* has

been furnished on this 29th day of November, 2017, by the Court's CM/ECF electronic mail system

to all parties receiving electronic notice.

/s/ Elena Paras Ketchum
Elena Paras Ketchum

13506.1958984

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| SENIOR CARE GROUP, INC., | Case No. 8:17-bk-6562-CPM |
| | Jointly Administered with: |
| KEY WEST HEALTH AND REHABILITATION CENTER, LLC, | Case No. 8:17-bk-06580-CPM |
| SCG BAYWOOD, LLC, | Case No. 8:17-bk-06563-CPM |
| SCG GRACEWOOD, LLC, | Case No. 8:17-bk-06564-CPM |
| SCG HARBOURWOOD, LLC, | Case No. 8:17-bk-06572-CPM |
| SCG LAURELLWOOD, LLC, | Case No. 8:17-bk-06576-CPM |
| THE BRIDGES NURSING AND REHABILITATION, LLC, | Case No. 8:17-bk-06579-CPM |
| Debtors. | |

_____/

**AGREED AMENDED ORDER ON MOTION OF SCG BAYWOOD, LLC,
SCG GRACEWOOD, LLC, SCG HARBOURWOOD, LLC, AND SCG LAURELLWOOD,
LLC FOR ENTRY OF AN ORDER (I) APPROVING BID PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THEIR ASSETS TO
TL CAPITAL MANAGEMENT, LLC, (II) ESTABLISHING PROCEDURES FOR THE
ASSUMPTION AND/OR ASSIGNMENT BY THE DEBTORS OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, (III) APPROVING BREAK UP FEE AND
MINIMUM OVERBID AMOUNT, (IV) APPROVING FORM AND MANNER OF
NOTICE OF BID PROCEDURES, AND (V) SETTING OBJECTION DEADLINES[1]**

---

[1]  By submission of this order for entry, the submitting counsel represents that the original order on bid procedures
[Doc. No. 228] is amended to reflect agreements with the Harbourwood TICs, with the consent of the Committee of

THESE CASES came on for hearing before the Court on November 9, 2017 at 9:30 a.m. (the "**Hearing**"), upon the Motion of SCG Baywood, LLC, SCG Gracewood, LLC, SCG Harbourwood, LLC, and SCG Laurellwood, LLC for Entry of an Order (I) Approving Bid Procedures in Connection with the Sale of Substantially All of  Their Assets to TL Capital Management, LLC, (II) Establishing Procedures for the Assumption and/or Assignment by the Debtors of Certain Executory Contracts and Unexpired Leases, (III) Approving Break Up Fee and Minimum Overbid Amount, (IV) Approving Form and Manner of Notice of Bid Procedures, and (V) Setting Objection Deadlines [Doc. No. 196] (the "**Motion**").[1][2]

The Debtors have also filed the Motion of SCG Baywood, LLC, SCG Gracewood, LLC, SCG Harbourwood, LLC, and SCG Laurellwood, LLC for Order Authorizing (I) the Sale of Substantially All of Their Assets to TL Capital Management, LLC Pursuant to 11 U.S.C. § 363, Free and Clear of All Liens, Claims and Encumbrances, and (II) Authorizing the Assumption and Assignment of Contracts [Doc. No. 198] (the "**Sale Motion**").

In the Motion, the Debtors requested that the Court consider the entry of an order (i) approving the bid procedures in connection with the sale of substantially all of the Debtors' assets pursuant to the Sale Motion to the party submitting the highest and best offer at the Auction, (ii) establishing procedures for the assumption and/or assignment of certain executory contracts and unexpired leases, (iii)  approving a minimum overbid amount and a break-up fee in connection with such sale, (iv) approving the form and manner of notice of the sale and the bidding procedures, and (v) setting deadlines for objections to the sale.

---

[1] Unsecured Creditors and Fifth Third Bank, primarily for clarification and as to the manner in which offers on the Parcels could be received.  A redline of the original order [Doc. No. 228] compared against the form of this agreed amended order has been filed with the Court and a copy is posted on the Debtors' counsel's website at www.srbp.com

[1][2]  Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Motion.

The Debtors operate four (4) nursing homes in Pinellas County which are referred to as Baywood, Gracewood, Harbourwood, and Laurellwood (collectively, the "**Facilities**"). The Debtors further announced that the Debtors had received an offer for the purchase of substantially all of the assets and property utilized with respect to the operation of the Debtors' four (4) Facilities (the "**TL Purchased Assets**"), pursuant to an Operations Transfer Agreement (the "**TL OTA**") from TL Capital Management, LLC ("**TL Capital**" or "**Stalking Horse Bidder**") free and clear of liens, claims and encumbrances, except certain assumed liabilities as set forth in the TL OTA. Each of the Facilities operates on and in the real property that, buildings and improvements attached thereto (collectively, the "**Parcels**") which the Facilities lease from the owners of the real estate Parcels (the "**Owners**") TL Capital has also made an offer to purchase from the Owners, the real estate Parcels upon which each of the Facilities is located (collectively, the "**Parcels**"), pursuant to a Purchase and Sale Agreement (the "**TL Purchase Agreement**" and together with the TL OTA hereinafter referred to together as the "**TL Sale Agreements**") between TL Capital and the Owners. Pursuant to the TL Sale Agreements, the consideration to be paid by TL Capital for the TL Purchased Assets and the Parcels shall be the total amount of Twenty-Seven Million Dollars ($27,000,000.00) (the "**TL Purchase Price**"), subject to adjustments set forth in the TL Sale Agreements.

At the Hearing, counsel for the Debtors set forth the bid procedures requested by the Debtors in connection with its receipt of the TL OTA from TL Capital and outlined the deadlines set forth in the bidding procedures. In addition, as to any bids for substantially all of the TL Purchased Assets and the Parcels, counsel for the Debtors requested an overbid amount of Two Hundred Thousand Dollars ($200,000) be approved by the Court. In addition, counsel for the Debtors requested a break-up fee in the amounts and subject to the conditions described in Ordered paragraph 3 below.

3

By its Motion, the Debtors request the Court establish the following deadlines and dates with respect to the relief requested by the Motion:

| | |
|---|---|
| **Bid Deadline** | **Monday, January 22, 2018 at 5:00 p.m. (Eastern Standard Time)** |
| **TL Capital Sale Objection Deadline** | **Friday, December 22, 2017** |
| **Cure Amount Objection Deadline** | **Friday, December 22, 2017** |
| **TL Capital Assumption Objection Deadline** | **The earlier of (i) 30 days after TL Capital has designated the contract for assignment and the counterparty has been notified of the designation or (ii) Friday, January 26, 2018** |
| **Auction** | **Thursday, January 25, 2018 at 10:00 a.m.** |
| **Competing Bidder Sale Objection Deadline** | **Friday, January 26, 2018** |
| **Competing Bidder Assumption Objection Deadline** | **Friday, January 26, 2018** |
| **Sale Hearing** | **Monday, January 29, 2018 at 1:30 p.m.** |

The Court finds that notice of the Motion and the Hearing to creditors and other parties in interest was sufficient, that it complied with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

The following objections were filed to the Motion and heard by the Court at the Hearing: (i) Harbourwood TIC Owners' Objection to Debtors' Motion Approving Bid Procedures (Docket No. 196) and Debtors' Motion Authorizing the Sale of Assets to TL Capital Management, LLC (Docket No. 198) (the "**Harbourwood TIC Objection**") [Doc. No. 204]; (ii) Limited Objection of the Official Committee of Unsecured Creditors to Motion (the "**Committee Objection**") [Doc. No. 209]; and (iii) Preliminary Objection of Harborwood/Gracewood Acquisition, LLC to Debtors' Motion for Approval of Bid Procedures (Docket No. 196) and Debtor's Motion for Approval of Sale of Assets to TL Capital Management, LLC (Docket No. 198) (the "**Harborwood/Gracewood Acquisition Objection**") [Doc. No. 210].   At the Hearing, the

4

Committee Objection was withdrawn in open court.  The Harbourwood TIC Objection to the Motion is overruled, in part, and ~~deferred~~granted, in part~~; specifically~~, as set forth herein, and the Court ~~overruled the Harbourwood TIC Objection as to~~deferred all objections ~~raised~~ to the Sale Motion and continued the objections ~~as~~ to the Sale Motion to be heard at the Sale Hearing scheduled for January 29, 2018 at 1:30 p.m.  The Harborwood/Gracewood Acquisition Objection is overruled, in part, and deferred, in part; specifically, the Court overruled the Harborwood/Gracewood Acquisition Objection as to all objections raised to the Motion and continued the objections as to the Sale Motion to be heard at the Sale Hearing scheduled for January 29, 2018 at 1:30 p.m.

The Court considered the Motion, together with the record and the arguments of counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, which shall constitute the order of the Court as if specifically provided herein, finds that the relief requested in the Motion is necessary and appropriate, and that the Motion is well taken and shall be granted in accordance with the terms and conditions set forth herein.  Specifically, the Court finds that it would be in the best interests of the Debtors, their creditors and their estates that an orderly procedure for the selection of the highest and best offer for the sale of the TL Purchased Assets be established.  The Court thus finds that it is appropriate to provide other prospective purchasers with the opportunity to submit competing bids for some or all of the TL Purchased Assets, and that notice of the proposed sale of the TL Purchased Assets shall be sent to all parties that expressed an interest in acquiring some or all of the TL Purchased Assets of the Debtors.  The Court also finds that it is appropriate to require any such prospective purchasers to comply with certain requirements in connection with the submission of competing bids, and that the bidding procedures proposed by the Debtors, as set forth in the Motion and as modified herein, are reasonable. The Court further finds that it is appropriate under the

circumstances to approve a minimum overbid amount as set forth below as to any bids for substantially all of the TL Purchased Assets and the Parcels.  The Court has scheduled a hearing to approve the sale to the successful bidder (the "**Sale Hearing**") for <u>Monday, January 29, 2018 at 1:30 p.m.</u>  Accordingly, it is

> **ORDERED**:

1.      The Motion is GRANTED.

2.      The Committee Objection was withdrawn in open court.  The Harbourwood TIC Objection is overruled, in part, and deferred, in part; specifically, the Court overruled the Harbourwood TIC Objection ~~as to all objections raised to the Motion~~<u>in part and granted in part as set forth herein</u> and continued the objections as to the Sale Motion to be heard at the Sale Hearing scheduled for January 29, 2018 at 1:30 p.m.  The Harborwood/Gracewood Acquisition Objection is overruled, in part, and deferred, in part; specifically, the Court overruled the Harborwood/Gracewood Acquisition Objection as to all objections raised to the Motion and continued the objections as to the Sale Motion to be heard at the Sale Hearing scheduled for January 29, 2018 at 1:30 p.m.

3.      The Court approves the following procedures (the "**Bid Procedures**") for the submission and consideration of any written competing bid ("**Bid**") by any competing bidder ("**Bidder"**) for the TL Purchased Assets and any other assets owned by any of the Debtors as to which a Bidder (defined below) may submit a Bid (defined below) (collectively, the "**Offered Assets**"):

> (a)      Any Bidder must deliver to the parties listed below a Bid for any or all of the Offered Assets and, to the extent such Bid is conditioned on simultaneous purchase of any of the Parcels, such Parcels by no later than <u>5:00 p.m. (Eastern Standard Time) on Monday, January 22, 2018</u> (the "**Bid Deadline**") or such later date agreed to by the Debtors, in consultation with Fifth Third Bank ("**Fifth Third**")~~ and~~<u>,</u> the Official Committee of Unsecured Creditors in the Debtors' bankruptcy cases (the "**Committee**")<u>, and Camille</u>

J. Iurillo, Esquire of Iurillo Law Group, P.A., counsel for the Harbourwood TICs. In the event that the Debtors extend the Bid Deadline, the Debtors shall immediately provide notice of the extended Bid Deadline to all prospective bidders. The parties to be served by the Bid Deadline with all Bids are:  (i) counsel to the Debtors, Scott A. Stichter, Esq. and Elena Paras Ketchum, Esq., Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602, Email: sstichter@srbp.com and eketchum@srbp.com; (ii) counsel for the Committee, Robert Lapowsky, Esq., Stevens & Lee, P.C., 620 Freedom Business Center, Suite 200, King of Prussia, PA 19406, Email: rl@stevenslee.com and Lori V. Vaughan, Esq., Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Suite 2700, Bank of America Plaza, 101 East Kennedy Blvd., Tampa, Florida 33602, Email: lvaughan@trenam.com, (iii) counsel for Fifth Third, Mark J. Wolfson, Esq., Foley & Lardner, LLP, 100 North Tampa Street, Suite 2700, Tampa, Florida 33602, Email: mwolfson@foley.com, (iv) the Office of the United States Trustee, Attn:  Nathan A. Wheatley, Esq., 501 East Polk Street, Suite 1200, Tampa, Florida 33602, Email: nathan.a.wheatley@usdoj.gov, (v) counsel to the Harbourwood Owners, Camille Iurillo, Iurillo Law Group. P.A., 5628 Central Avenue St. Petersburg, FL 33707: ciurillo@iurillolaw.com  (the parties identified in subparagraph (i) – (v) above being hereafter referred to as the "**Notice Parties**"), (vi) each of the Owners listed on **Schedule 1** attached hereto, and (vii) if the Bidder includes Designated Contracts in its Bid, to the other party (or its counsel) to the Designated Contracts.

(b)  Prior to receipt by a prospective Bidder of any information (including business and financial information and access to the Debtors) from the Debtors, each such Bidder will be required to execute a confidentiality agreement in form and content acceptable to the Debtors.

(c)  A Bid shall be for at least one Facility but may be for multiple Facilities. A Bid may be conditioned on simultaneous acquisition of the Parcel relating to the Facility or Facilities which are the subject of the Bid. To the extent the Bid for a Facility is not conditioned upon simultaneous acquisition of the related Parcel, the Bid shall include an agreement by the Bidder to accept assignment of the existing lease for such Parcel. If a Bid is for assets owned by more than one seller, any allocation of consideration among such assets shall not be binding on the applicable sellers and, prior to the Auction, the applicable sellers shall attempt, in good faith, to agree on such allocation.

(d)  A Bid submitted by a Bidder must include the following:

i)  A written offer for some or all of the Offered Assets (the "**Bidder's Purchased Assets**") in the form of an operations transfer agreement (the "**Bidder's OTA**") and, if applicable, a purchase agreement for any of the Parcels proposed to be

purchased (the "**Bidder's Purchase Agreement**" and, together with the Bidder's OTA, the "**Bidder's Agreements**"), must be executed by such Bidder, in substantially the form of the TL OTA, for any Purchased Assets, and the TL Purchase Agreement, as may be amended prior to the Bid Deadline, for any Parcels; accompanied by a black-line to show all changes made by such Bidder to the form of the TL OTA and, if applicable, the TL Purchase Agreement. The Bidder's Agreements must be signed by such Bidder and be subject to acceptance by the Debtors and, if applicable, the Owners solely by their execution thereof and, in the case of the Bidder's OTA, Court approval.  The Debtors, in consultation with ~~Firth~~Fifth Third and the Committee, and, if applicable, the Owners may accept modifications to the Bidder's Agreements if the Debtors, in consultation with Fifth Third and the Committee, and the Owners, if applicable, determine, in the exercise of their business judgment, that the proposed modifications result in a higher and better offer for the Offered Assets and the Parcels.  A copy of the TL OTA and the TL Purchase Agreement shall be furnished in Microsoft Word format to any Bidder requesting a copy.

ii)   If the Bid is for the TL Purchased Assets and the Parcels, a statement that specifically sets forth the extent to which the Bid is higher and better than the offer set forth in the TL OTA and the TL Purchase Agreement.

iii)   A designation of any executory contracts or unexpired leases such Bidder desires the Debtors to assume and assign to the Bidder (the "**Designated Contracts**").

iv)   A purchase price which is cash only (unless otherwise agreed by the Debtors, in consultation with Fifth Third and the Committee, and, if applicable, the Owners), subject to Fifth Third's, the Committee's, and the Owners' ability to object to any material changes as to the payment of the purchase price.

v)   A designation of those liabilities of the Debtors and, if applicable, the Owners such Bidder intends to assume.

vi)   Relevant background and financial information reasonably satisfactory to the Debtors, in consultation with Fifth Third and the Committee, and, if applicable, the Owners (including without limitation the latest available audited and unaudited financial statements) demonstrating the Bidder's financial

ability to close and to consummate an acquisition of the Bidder's Purchased Assets and, to the extent applicable, the Parcels, such as (1) evidence of the Bidder's ability to assume or satisfy the terms and obligations of the Bidder's Agreements, pay the purchase price provided for therein and provide adequate assurance of future performance as to any Designated Contracts (including any leases of any Parcels) pursuant to § 365 of the Bankruptcy Code, and (2) a lending commitment from a recognized financial institution or cash sources in the amount of the Bid subject to only those conditions that are acceptable to the Debtors, in consultation with Fifth Third and the Committee, and, if applicable, the Owners.

vii)   A good faith deposit in immediately available funds in the amount of the lesser of (A) two percent (2%) of the amount of the Bid, and (B) Five Hundred Thousand Dollars ($500,000.00) (the "**Bid Deposit**"), which shall be made payable to and delivered to Stichter, Riedel, Blain & Postler, P.A. ("**Stichter Riedel**"), counsel to the Debtors, by no later than the Bid Deadline (or such later date agreed to by the Debtors, in consultation with Fifth Third and the Committee).  The Bid Deposit shall be deposited into a non-IOTA non-interest-bearing trust account maintained by Stichter Riedel.  Such Bid Deposit will be non-refundable to the Bidder and forfeited to the Debtors and the Owners, if applicable and in the event the Owners have executed a purchase and sale agreement (to be allocated among them as they shall determine or as ordered by the Bankruptcy Court) in the event such Bidder's Bid is approved by the Court at the Sale Hearing as the highest and best offer and such Bidder fails to close on the purchase of the Bidder's Purchased Assets for any reason other than the failure of a condition to the Bidder's obligation to close provided that such failure was not caused or preceded by a default by such Bidder under any Bidder's Agreement. The Bid Deposit will be applied against the purchase price at the closing.  Within five (5) days following the entry of the Sale Order, Stichter Riedel will return the Bid Deposit of all Bidders except the Bidder whose Bid is approved by the Sale Order (the "**Successful Bidder**") and the Backup Bidder (defined below). The Backup Bidder's Bid Deposit will be returned within five (5) days following the closing with the Successful Bidder.

(e)   If one or more Bids which meet the requirements stated above (each a "**Qualified Bid**") are received, an auction (the "**Auction**") to be conducted

in accordance with the Bid Procedures shall be held on <u>Thursday, January 25, 2018 at 10:00 a.m.</u>, at the offices of Stichter, Riedel, Blain & Postler, P.A. or at such other location in Tampa, Florida designated by the Debtors. All Bidders who submitted Qualified Bids with full authority to participate in the Auction must be present in person at the Auction.  At the Auction, the Debtors, in consultation with Fifth Third, the Committee, and the Owners may request a Bidder to provide additional information demonstrating the Bidder's financial ability to close and to consummate an acquisition of the Bidder Purchased Assets and, if applicable, the Parcels. At the Auction, the Debtors, in consultation with Fifth Third, the Committee, and the Owners shall consider Bids for all of the Offered Assets and Parcels, as well as considering bids for certain Offered Assets and/or certain Parcels. The Debtors, in consultation with Fifth Third, the Committee, and if applicable, the Owners, reserve the right to reject a Bid for only certain Offered Assets and/or certain Parcels if, in their sole business judgment, such partial Bid or any combination of partial Bids will not result in a higher and better offer for the benefit of the Debtors, their estates, and their creditors. At the conclusion of the Auction, the Debtors, in consultation with Fifth Third, the Committee, and if applicable, the Owners, will announce the Bid or Bids it considers to be the highest and best offer(s) for the Offered Assets (the "**High Auction Bid(s)**"), after taking into account all aspects of the Bids and the Bidders' Agreements (including, without limitation, the amount of the purchase price, the method and timing of the payment of the purchase price, conditions to closing, the time for closing, the representations, warranties and covenants to be provided by the Debtors and, if applicable, the Break-up Fee (defined below)). At the Sale Hearing, the Debtors will seek approval of the High Auction Bid(s).  The Bidder(s) who submitted the High Auction Bid and any Backup Bids or their authorized representatives must be present at the Sale Hearing.

(f)     The Auction will be conducted as an "open cry" auction.  Bidding will begin at the purchase price stated in the highest and best Bid(s) as selected by the Debtors, in consultation with the Committee and Fifth Third Bank, Fifth Third Bank, Camille J. Iurillo, Esquire of Iurillo Law Group, P.A., counsel for the Harbourwood TICs, and any other Owner or Owner's representative in attendance at the Auction.

(g)     Any initial Bid for substantially all of the TL Purchased Assets and Parcels must provide for a purchase price of at least Seven Hundred and Fifty Thousand Dollars ($750,000.00) above the purchase price offered by TL Capital. TL Capital shall be entitled to submit further bids at the Auction. All subsequent higher Bids for substantially all of the TL Purchased Assets and all of the Parcels above the initial Bid (including any subsequent Bid which may be made by TL Capital) must be in an amount which nets at least One Hundred Thousand Dollars ($100,000.00) in increased consideration and be payable in cash (the "**Overbid Amount**"). For purposes of

calculating such net increased consideration, the Break-Up Fee shall be taken into account.

(h)    Any successive overbid shall be irrevocable unless and until it is declared to not be the highest or best bid.  The competitive bidding process among Bidders shall continue according to these Bid Procedures until the Debtors determine, in the exercise of their business judgment and in consultation with Fifth Third and the Committee, the Committee, Camille J. Iurillo, Esquire of Iurillo Law Group, P.A., counsel for the Harbourwood TICs, and any other Owner or Owner's representative in attendance at the Auction, that a Bidder has made the highest and best offer to purchase the TL Purchased Assets (the "**Prevailing Bidder**").

(i)    Any Bid shall not be contingent upon receipt of financing or due diligence past the Bid Deadline.

(j)    Any Bidder shall provide satisfactory evidence (as determined by the Debtors, in consultation with Fifth Third and the Committee, and, if applicable, the Owners) that it is (i) financially able to consummate the transaction contemplated by such Bid and (ii) able to consummate the transaction on the date and on the terms contemplated by the Bidder's Agreements.

(k)    Any Bid shall not contain any conditions precedent to such Bidder's obligation to purchase the TL Purchased Assets and the Parcels and assume and perform any liabilities to be assumed, other than as may be included in the Bidder's OTA and, if applicable, the Bidder's Purchase Agreement.

(l)    Any Bid shall set forth (1) any applicable governmental, regulatory, or other approvals and any applicable consents that would be required to be obtained, (2) all actions taken to obtain such approvals or consents, (3) any approvals or consents obtained, and (4) the Bidder's best estimates as to the likelihood and timing of any such approvals or consents.

(m)    If any Bid does not conform to all of the requirements set forth above, such Bid will not be considered by the Court or be admissible at the Sale Hearing, unless otherwise agreed to by the Debtors, in consultation with Fifth Third and the Committee, the Committee, Camille J. Iurillo, Esquire of Iurillo Law Group, P.A., counsel for the Harbourwood TICs, and any other Owner or Owner's representative in attendance at the Auction.

(n)    The Court will conduct a hearing (the "**Sale Hearing**") on Monday, January 29, 2018 at 1:30 p.m., to consider approval of the highest and best bid and the sale of the TL Purchased Assets to the Prevailing Bidder.  At the Sale Hearing, the Debtors will seek entry of an order authorizing and approving the sale of the TL Purchased Assets to the

Prevailing Bidder and will request that such order become effective immediately.

(o)     Upon approval by the Bankruptcy Court, the Successful Bidder shall be required to close on the purchase of the TL Purchased Assets pursuant to the terms set forth in the ~~asset purchase agreement~~Bidder's OTA.

(p)     At the Sale Hearing, the Court shall register the second highest Bid and Bidder (the "**Backup Bidder**"), whose Bidder's Agreement shall be a binding contract with the Debtors and, if applicable, the Owners and shall close in the event the Successful Bidder fails to consummate the acquisition of the TL Purchased Assets and, if applicable, the Parcels in accordance with the provisions described in this Order and in the Sale Order.  The bid of the Backup Bidder shall remain irrevocable and the Debtor shall retain the deposit of the Backup Bidder until the Successful Bidder has closed. Any closing with the Backup Bidder shall occur within two (2) days of written notification to the Backup Bidder that the Successful Bidder failed to close.

(q)     Other than TL Capital, no Bidder submitting any Bid shall be entitled to any expense reimbursement or any break-up, termination or similar fee or payment.

(r)     All objections to the sale of the TL Purchased Assets to TL Capital shall be filed with the Court and served on the parties set forth in subparagraph (a) above on or before Friday, December 22, 2017 (the "**TL Capital Sale Objection Deadline**").

(s)     All objections to the sale of the Offered Assets to the Prevailing Bidder, other than TL Capital, or the Backup Bidder, other than TL Capital, at the Auction shall be filed with the Court and served on the parties set forth in subparagraph (a) above on or before Friday, January 26, 2018 (the "**Competing Bidder Sale Objection Deadline**").

1.      Regardless of any other terms set forth in this Order, if any person desires to make an offer to purchase Parcels owned by any of the Owners without the related Facilities owned by the Debtors, such person is to contact David Fasano of HFF and if the offer is related to the Parcel commonly referred to as the Harbourwood property, such person is to also contact Camille J.

Iurillo, Esquire of Iurillo Law Group, P.A.  An offer to purchase any of the Parcels without the related Facilities owned by the Debtors is not subject to the bid procedures contained in this Order.[3]

2.    ~~4.~~If the Debtors are required pursuant to this Order to consult with Fifth Third or the Committee on a particular matter, then to the extent a matter relates to the Harbourwood Parcel, then the Debtors shall also consult with the Harbourwood TICs through their counsel Camille J. Iurillo, Esquire of Iurillo Law Group, P.A.

3.    ~~5.~~The Court hereby approves a break-up fee (the "**Break Up Fee**") for TL Capital as liquidated damages for TL Capital's time, expenses, and lost opportunities in connection with these transactions if a higher and better offer for some or all of the TL Purchased Assets and Parcels is received and approved by the Court and the sale is consummated thereafter with the Successful Bidder, who is not TL Capital as follows: (a) if such sale or sales include substantially all of the TL Purchased Assets and all of the Parcels and if the TL Allocation Agreement (defined below) between and among TL Capital, the Debtors, the Owners, the Committee, and Fifth Third is reached, in the amount of Seven  Hundred and Fifty Thousand Dollars ($750,000.00), (b) if such sale or sales include some but less than substantially all of the TL Purchased Assets and only some or less than all of the Parcels and if the TL Allocation Agreement between and among TL Capital, the Debtors, the Owners, the Committee, and Fifth Third is reached, in the amount of (i) Seven Hundred and Fifty Thousand Dollars ($750,000.00) multiplied by (ii) a fraction, the numerator of which is the dollar amount of the TL Purchase Price allocated pursuant to the TL Allocation Agreement to each Debtor and each Owner that owns the TL Purchased Assets and the Parcels being sold and the denominator of which is Twenty Five Million Dollars ($25,000,000.00), and (c) in all other circumstances, in an amount equal to Three Percent (3%) of the gross sale proceeds

---

[3]  An offer to purchase any of the Parcels without the related Facilities owned by the Debtors shall not be a Qualified Bid.

payable in cash at closing of such sale or sales (the "**Competing Bid Proceeds**"). Further, liability for the Break Up Fee shall be allocated among the Debtors and Owners as follows (x) if the TL Allocation Agreement between and among TL Capital, the Debtors, the Owners, the Committee, and Fifth Third is reached, each Debtor and each Owner shall be liable only for that portion of the Break Up Fee equal to the percentage of the TL Purchase Price allocated to such Debtor or Owner under the TL Allocation Agreement, or (y) if the TL Allocation Agreement between and among TL Capital, the Debtors, the Owners, the Committee, and Fifth Third is not reached, each Debtor and each Owner shall be liable only for that portion of the Break Up Fee equal to Three percent (3%) of the Competing Bid Proceeds actually paid to such Debtor or Owner in cash at closing. Notwithstanding the foregoing , there shall be no Break Up Fee or entitlement to a Break Up Fee by TL Capital if, prior to the Auction, TL terminates the TL OTA, other than as a result of any breach of the TL OTA by any of the Debtors. For the avoidance of doubt, the Break Up Fee shall be paid from the sale proceeds in the event a sale of some or all of the TL Purchased Assets and Parcels is approved by the Court and consummated thereafter with the Successful Bidder, who is not TL Capital. For the further avoidance of doubt, if an Owner does not sell its respective Parcel, such Owner is not responsible for payment of the Break Up Fee.

4. ~~6.~~ The TL Purchase Price has not yet been allocated between and among the Debtors and the Owners.  The obligation of the Debtors and the Owners to close on the TL Sale Agreements is conditioned on agreements (the "**TL Allocation Agreements**") to be negotiated in good faith ~~(a)~~ between and among TL Capital, the Debtors, the Owners, the Committee, and Fifth Third allocating the TL Purchase Price ~~and (b) between and among~~, and conditioned on the respective Owners agreeing to the sale of their respective Parcels. In addition, each Debtor, Fifth Third, and the Committee ~~allocating~~will negotiate an allocation of each Debtor's portion of the

14

sale proceeds and in the absence of reaching agreement, such allocation will be determined by order of the Court.

5.   7.   The Court also finds that the Overbid Amount is reasonable under the circumstances of a bid for substantially all of the TL Purchased Assets and all of the Parcels and approves the Overbid Amount in such circumstances.

6.   8.   As soon as practicable, but in any event no later than five (5) business days following entry of this Order, the Debtors shall serve a notice (the "**Assumption and Assignment Notice**") by first class mail upon each counterparty (including the Owners) to an executory contract with any Debtor (a "**Contract**"). The Assumption and Assignment Notice will (i) inform each recipient that the Debtors are seeking to sell substantially all of their assets, (ii) identify the Contract, (iii) advise that, in connection with the sale process, such Contract may be assumed and assigned to TL Capital or another Bidder, (iv) state the amounts (the "**Cure Amounts**") that the Debtors assert are due to cure any monetary and non-monetary defaults in the event that the applicable Contract is assumed and assigned, (v) advise that any objections to the Cure Amounts (the "**Cure Amount Objection**") must be in writing, include the detail described in paragraph 89 below and be filed with the Court no later than Friday, December 22, 2017 (the "**Cure Amount Objection Deadline**"), (vi) advise that any objections to the assumption and assignment byto TL Capital of any Contracts identified in an Assumption and Assignment Notice, including based upon the ability of TL Capital to provide adequate assurance of future performance, (the "**TL Capital Assumption Objection**") must be in writing, include the detail described in paragraph 8 below and be filed with the Court by the earlier of (i) 30 days after TL Capital has designated the contract for assignment and the counterparty has been notified of the designation and (ii) Friday, January 26, 2018 (the "**TL Capital Assumption Objection Deadline**"), (vii) advise that, in the event the Prevailing Bidder, other than TL Capital, or Backup Bidder, other than TL Capital,

includes Designated Contracts in its Bid, any objections to the ability of such Prevailing Bidder or Backup Bidder to provide adequate assurance of future performance (the "**Competing Bidder Assumption Objection**") must be in writing, include the detail described in paragraph 8 below and be filed with the Court no later than <u>Friday, January 26, 2018</u> (the "**Competing Bidder Assumption Objection Deadline**"), and (viii) advise that any timely asserted Cure Amount Objection, TL Capital Assumption Objection, and Competing Bidder Assumption Objection will be decided by the Court at the Sale Hearing.

<u>7.</u>    ~~9.~~ Each of the Cure Amount Objection, TL Capital Assumption Objection, and Competing Bidder Assumption Objection shall set forth: (a) the specific grounds for such objection; and (b) any and all defaults of the Debtors (whether monetary or non-monetary) that the objector alleges are in existence under such Contract and if such alleged defaults are non-monetary, the nature of such non-monetary defaults and the amount of money or the type of action required to cure such non-monetary defaults.

<u>8.</u>    ~~10.~~ Any lessors or other parties to Contracts who fail to assert timely objections to the proposed assumption and assignment of their Contracts and/or to the Cure Amounts stated in any Assumption and Assignment Notice shall be conclusively deemed to have waived any such objections and to have consented thereto.

<u>9.</u>    ~~11.~~ Any lessors or other parties to Contracts filing a Cure Amount Objection, TL Capital Assumption Objection, or Competing Bidder Assumption Objection must serve the objection so as to the received by the relevant deadline by the Notice Parties set forth in subparagraph 3(a) above.

<u>10.</u>    ~~12.~~ The granting of the Motion as set forth herein shall not constitute the approval of any sale of the TL Purchased Assets or any term or provision of the TL Sale Agreements, except

with regard to the Overbid Amount, the Break Up Fee, the objection deadlines, and any other terms provided herein.

11.   13.  To the extent there is any inconsistency between the provisions of this Order and the terms of the TL OTA, the provisions of this Order shall control.

14.   Following the entry of this Order, the Debtor shall serve a copy of this Order to (a) parties listed on the Local Rule 1007-2 Parties in Interest List; (b) all parties which, to the knowledge of the Debtors, have or have asserted liens on the Offered Assets and the Parcels; (c) all Owners; (d) all counterparties to the Contracts; and (e) any party that has expressed an interest to the Debtors in acquiring any of the Offered Assets and/or the Parcels.  This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

*Attorney Scott A. Stichter is directed to serve a copy of this order on interested parties who are non-ECF users and file a proof of service within 3 days of entry of the order.*

17

Document comparison by Workshare 9 on Wednesday, November 29, 2017 11:40:20 AM

| Input: | |
|---|---|
| Document 1 ID | file://H:\User\Senior Care Group - BR\Sale Docs\Bid Procedures Orders\Bid Procedures Ord - Final (orig).docx |
| Description | Bid Procedures Ord - Final (orig) |
| Document 2 ID | file://H:\User\Senior Care Group - BR\Sale Docs\Bid Procedures Orders\Bid Procedures Ord - Amended Final (11.29.17).docx |
| Description | Bid Procedures Ord - Amended Final (11.29.17) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 49 |
| Deletions | 35 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 86 |