UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| SENIOR CARE GROUP, INC., | Case No. 8:17-bk-6562-CPM |
| | *Jointly Administered with:* |
| KEY WEST HEALTH AND REHABILITATION | |
| CENTER, LLC, | Case No. 8:17-bk-06580-CPM |
| SCG BAYWOOD, LLC, | Case No. 8:17-bk-06563-CPM |
| SCG GRACEWOOD, LLC, | Case No. 8:17-bk-06564-CPM |
| SCG HARBOURWOOD, LLC, | Case No. 8:17-bk-06572-CPM |
| SCG LAURELLWOOD, LLC, | Case No. 8:17-bk-06576-CPM |
| THE BRIDGES NURSING AND | |
| REHABILITATION, LLC, | Case No. 8:17-bk-06579-CPM |
| Debtors. | |
| _____/ | |
| SENIOR CARE GROUP, INC., | Case No. 8:17-bk-6562-CPM |
| KEY WEST HEALTH AND REHABILITATION | |
| CENTER, LLC, | Case No. 8:17-bk-06580-CPM |
| THE BRIDGES NURSING AND | |
| REHABILITATION, LLC, | Case No. 8:17-bk-06579-CPM |
| Applicable Debtors. | |
| _____/ | |

**JOINT PLAN OF REORGANIZATION OF
SENIOR CARE GROUP, INC.; KEY WEST HEALTH AND
REHABILITATION CENTER, LLC; AND THE BRIDGES NURSING AND
REHABILITATION, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Scott A. Stichter (FBN 0710679)
Elena Paras Ketchum (FBN 0129267)
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
(813) 229-0144 – Phone
(813) 229-1811- Fax
sstichter@srbp.com
eketchum@srbp.com
Attorneys for Debtors

Tampa, Florida
Dated as of March 6, 2019

PURSUANT TO § 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS JOINT PLAN OF REORGANIZATION SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTORS' DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN CONDITIONALLY OR FINALLY APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THIS PLAN.  THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS; THE DEBTORS' HISTORIES, BUSINESSES, PROPERTIES, AND RESULTS OF OPERATIONS; A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASES; AND THE MEANS OF IMPLEMENTING AND FUNDING THIS PLAN.  ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# ARTICLE 1
# INTRODUCTION

SENIOR CARE GROUP, INC. ("**Senior Care**"); KEY WEST HEALTH AND REHABILITATION CENTER, LLC ("**Key West**"); and THE BRIDGES NURSING AND REHABILITATION, LLC ("**The Home Association**" and together with Senior Care and Key West, the "**Plan Proponents**" or the "**Debtors**"), the Debtors and Debtors in Possession in the Bankruptcy Cases, propose this Joint Plan of Reorganization of Senior Care Group, Inc.; Key West Health and Rehabilitation Center, LLC; and The Bridges Nursing and Rehabilitation, LLC (the "**Plan**") for reorganization of the Debtors and resolution of outstanding Claims against and Interests in the Debtors pursuant to the provisions of Chapter 11 of the Bankruptcy Code and request Confirmation of the Plan pursuant to § 1129 of the Bankruptcy Code. Capitalized terms used herein shall have the meanings ascribed to such terms in Article 2.1 of the Plan. The Debtors are the proponents of the Plan within the meaning of § 1129 of the Bankruptcy Code.

In summary, but subject to more specific details provided herein, the Plan provides for the payment of Claims over time from Cash, the Cash Contribution, and the revenues generated by the Debtors' continuing operations. To the extent that there are Allowed Secured Claims, such Claims shall be paid over time.

Under § 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Interest until such time as the Disclosure Statement for Joint Plan of Reorganization of Senior Care Group, Inc.; Key West Health and Rehabilitation Center, LLC; and The Bridges Nursing and Rehabilitation, LLC Under Chapter 11 of the Bankruptcy Code (the "**Disclosure Statement**") has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The Disclosure Statement was conditionally approved by the Bankruptcy Court by the Disclosure Statement Approval Order, which is being distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtors' histories, businesses, properties, and results of operations, (b) a summary of significant events which have occurred to date in the Bankruptcy Cases and Related Bankruptcy Cases, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement (and any Exhibits attached thereto or referenced therein), Disclosure Statement Approval Order and Ballot, have been approved by the Debtors or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN, THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

THE PLAN HAS BEEN APPROVED BY THE DEBTORS. IN THE OPINION OF THE DEBTORS, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTORS. ACCORDINGLY, THE DEBTORS BELIEVE THAT CONFIRMATION OF THE

PLAN IS IN THE BEST INTERESTS OF CREDITORS AND RECOMMEND THAT CREDITORS VOTE TO ACCEPT THE PLAN.

Subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 12 of the Plan, the Debtors expressly reserve the right to alter, after notice and a hearing, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESSES, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ALL PERSONS OR ENTITIES SHOULD EVALUATE THE PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1    **Defined Terms**.

As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

"**Administrative Expense**" means (a) any cost or expense of administration of the Bankruptcy Cases under §§ 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Cases on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estates or operating the business of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in Possession in the ordinary course of their business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court

under § 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (c) any and all other costs or expenses of administration of the Bankruptcy Cases that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 5.  In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtors for any Postpetition tax year or period).

"**Administrative Expense Claim**" means any Claim for the payment of an Administrative Expense.

"**Administrative Expense Claim Bar Date**" means the date(s) established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim, including as established in the Disclosure Statement Approval Order.  Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Postpetition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtors, any of the Reorganized Debtors, any of their Properties, or the Estates, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

"**AHCA**" means the State of Florida, Agency for Health Care Administration.

"**Allowed Amount**" means the dollar amount in which a Claim is allowed.

"**Allowed Claim**" means a Prepetition or Postpetition Claim, or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, the Governmental Unit Bar Date, or the Administrative Expense Claim Bar Date as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed on or before any applicable Claims Objection Deadline, or (ii) any objection as to the allowance of such Claim has been settled or withdrawn or has been overruled by a Final Order.  "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**"Allowed Class ... Claim"** means an Allowed Claim in the particular Class described.

**"Ally"** means Ally Financial.

**"Assets"** means any of the property or assets of any kind, whether real, personal, tangible, or intangible, whether now existing or hereafter acquired or arising and wherever located and any interest of any kind therein.

**"Autumn Breeze"** means SCG Autumn Breeze, LLC

**"Avoidance Actions"** means any and all actions to avoid or recover a transfer of Property of the Debtors' Estates or an interest of the Debtors in Property, under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of §§ 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

**"Ballot"** means the ballot, accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**"Bankruptcy Cases"** means the cases of the Debtors currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which cases were commenced by the Debtors on the Petition Date and presently bear Case No. 8:17-bk-6562-CPM, Case No. 8:17-bk-6580-CPM, and Case No. 8:17-bk-6579-CPM. The Bankruptcy Cases are jointly administered with the cases filed by the Related Debtors under Case No. 8:17-bk-0562-CPM.

**"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Cases.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as promulgated under § 2075 of title 28 of the United States Code, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

**"Bar Date"** means November 13, 2017 in the Bankruptcy Cases, the dates set by the Bankruptcy Court as the last day for filing a Proof of Claim against the Debtors in the Bankruptcy Cases, excluding (a) a Prepetition Claim of a Governmental Unit, for which a Proof

4

of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is assumed or rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article 7.5 or 7.6, respectively, of the Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

**"Baywood"** means SCG Baywood, LLC.

**"Business Day"** means any day other than (a) a Saturday, (b) a Sunday, or (c) a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**"Cash"** means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from any of the Debtors, or any of the Reorganized Debtors, as may be applicable, drawn on a domestic bank.

**"Cash Contribution"** means the amount of $200,000 to be contributed to the Reorganized Debtor on the Effective Date of the Plan.

**"Causes of Action"** means any and all of the Debtors' or the Estates' actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) the Avoidance Actions and (b) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to in the Disclosure Statement or in the Plan. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtors pursuant to a Final Order of the Bankruptcy Court. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Plan Proponents to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall any of the Reorganized Debtors, as a result of such failure, be estopped or precluded under any theory from pursuing such Causes of Action. Except as waived by the terms of this Plan or Final Order of the Bankruptcy Court, nothing in the Plan operates as a release of any of the Causes of Action.

**"Causes of Action Recoveries"** means the proceeds, benefits and other recoveries received by the applicable Reorganized Debtor on account of the Causes of Action.

**"Claim"** has the meaning ascribed to such term in § 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the

term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise, including Administrative Expense Claims.

"**Claims Objection Deadline**" means:  (a) as to Administrative Claims (other than Professional Administrative Expense Claims), Priority Claims and Secured Claims, ninety (90) days after the Effective Date, which may be extended for an additional ninety (90) days by the applicable Reorganized Debtor provided applicable Reorganized Debtor files a notice of such extension prior to expiration of the initial ninety (90) day period; and (b) for all other Claims ninety (90) days after the Effective Date.

"**Class**" means a category of Claims or Interests classified together as described in Article 4 of the Plan.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Clerk's Office**" means the Office of the Clerk of the Bankruptcy Court located at the Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602.

"**Collateral**" means Property in which the Estates has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases and the Related Bankruptcy Cases.

"**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

"**Confirmation Hearing**" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to § 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court in the Bankruptcy Cases confirming the Plan pursuant to § 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented.

"**Creditor**" means the Holder of a Claim, within the meaning of § 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Tax Claims, and Priority Claims.

"**Debt**" has the meaning ascribed to such term in § 101(12) of the Bankruptcy Code.

"**Debtors**" means Senior Care, Key West, and The Home Association.

"**Debtors' Bankruptcy Counsel**" means Stichter, Riedel, Blain & Postler, P. A.

"**Debtors in Possession**" means the Debtors, as debtors in possession in the Bankruptcy Cases.

"**Deer Park**" means Senior Care Group of McDowell, LLC.

"**Diamond**" means Senior Focus Health Systems, LLC, d/b/a Diamond Home Health.

"**Diamond Payment**" means the amount equal to ten percent (10%) of all revenues generated by Diamond in excess of two million dollars ($2,000,000).

"**Disallowed Claim**" means any Claim that has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

"**Disclosure Statement**" means the Disclosure Statement for Joint Plan of Reorganization of Senior Care Group, Inc.; Key West Health and Rehabilitation Center, LLC; and The Bridges Nursing and Rehabilitation, LLC Under Chapter 11 of the Bankruptcy Code dated as of March 6, 2019 including all Exhibits attached thereto, as submitted and filed by the Debtors pursuant to § 1125 of the Bankruptcy Code and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

"**Disclosure Statement Approval Order**" means the Order Approving Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of Plan, and Setting Deadlines with Respect to Confirmation Hearing entered in the Bankruptcy Cases.

"**Disputed Claim**" means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim

scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.  To the extent that the amount of the Clam specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.  "Disputed", when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

"**Distribution**" means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

"**Distribution Date**" means the date a Distribution is made.

"**Docket**" means the docket or dockets in the Bankruptcy Cases maintained by the Clerk.

"**Effective Date**" means the date on which the conditions in Article 10.2 of the Plan have occurred or have been satisfied.

"**Entity**" has the meaning ascribed to such term in § 101(15) of the Bankruptcy Code.

"**Estates**" or "**Estate**" means the Estate created for the Debtors by § 541 of the Bankruptcy Code upon the commencement of the applicable Bankruptcy Case.

"**Estimation Hearing**" means a hearing for the estimation of Claims under § 502(c) of the Bankruptcy Code.

"**Exhibit**" means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

"**Final Decree**" means the final decree for the Bankruptcy Cases entered by the Bankruptcy Court after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Decree Date**" means the date on which the Final Decree is entered on the docket for the Bankruptcy Cases.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Cases for the purpose of such proceeding, which order, judgment, ruling or other

decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of any such appeal, petition for review, reargument, refinancing, or reconsideration, or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**Governmental Unit**" has the meaning ascribed to such term in § 101(27) of the Bankruptcy Code.

"**Governmental Unit Bar Date**" means January 23, 2018 in the Debtors' Bankruptcy Cases, the date set by § 502(b)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim against the Debtors in the Bankruptcy Cases.

"**Gracewood**" means SCG Gracewood, LLC.

"**Harbourwood**" means SCG Harbourwood, LLC.

"**Holder**" means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and any of the Debtors, as the case may be, have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the register that is maintained by the Debtors or as otherwise determined by order of the Bankruptcy Court.

"**Impaired**" refers to any Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"**Insured Claim**" means any Claim against a Debtor payable, in whole or in part, by an insurance policy or policies issued by an insurance company on behalf of such Debtor.

"**Interests**" means the membership interests in each of the Debtors.

"**Key West**" means Key West Health and Rehabilitation Center, LLC.

"**Key West Plan Payment**" means the quarterly sum of $50,000.

"**Laurellwood**" means SCG Laurellwood, LLC.

"**Liabilities**" means any and all liabilities, obligations,  judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether

heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtors or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any predecessor, successor or assign thereof, any Property of the Debtors, the business or operations of the Debtors, the Bankruptcy Cases, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include any obligations of any of the Reorganized Debtors expressly set forth in the Plan.

"**Lien**" means, with respect to any Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

"**Local Rule Service List**" means the "Local Rule 1007-2 Parties in Interest List" for the Bankruptcy Cases, as that term is defined in Local Rule 1007-2(b).

"**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Cases.

"**McKesson**" means McKesson Medical Surgical Supply, Inc.

"**Notice of Effective Date**" has the meaning set forth in § 10.3 of the Plan.

"**Notice Parties**" means (a) the Debtors or the Reorganized Debtors, as the case may be; (b) Bankruptcy Counsel for the Debtors, or the Reorganized Debtors, as the case may be; (c) the United States Trustee; (d) the Committee, if in existence, (e) counsel for the Committee, if in existence; and (f) all parties then set forth on the Local Rule 1007-2(d) Parties in Interest List.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in § 101(41) of the Bankruptcy Code.

"**Petition Date**" means July 27, 2017, the date on which the Debtors commenced the Bankruptcy Cases by filing their voluntary petitions under Chapter 11 of the Bankruptcy Code.

"**Plan**" means the Joint Plan of Reorganization of Senior Care Group, Inc.; Key West Health and Rehabilitation Center, LLC; and The Bridges Nursing and Rehabilitation, LLC

Under Chapter 11 of the Bankruptcy Code dated as of March 6, 2019, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

"**Plan Distributions**" means the quarterly payments to be made by Senior Care.

"**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

"**Prepetition**" means arising or accruing prior to the Petition Date.

"**Priority Claim**" means a Claim that is entitled to a priority in payment pursuant to §§ 507(a)(4), (5) and (7) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim, or an Unsecured Claim.

"**Priority Tax Claim**" means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Priority Claim, a Secured Claim, a Secured Tax Claim, or an Unsecured Claim.

"**Professional**" means any person employed in the Bankruptcy Cases pursuant to an order of the Bankruptcy Court, pursuant to § 327 or 1103 of the Bankruptcy Code.

"**Professional Administrative Expense Claims**" means Administrative Claims of Professionals subject to final allowance pursuant to Section 330 of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtors pursuant to Bankruptcy Rule 3001, 3002 or 3003.

"**Property**" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

"***Pro Rata* Share**" means, with respect to any Distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Disputed Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

"**Rejected Contracts**" has the meaning ascribed to such term in Article 7.1 of the Plan.

"**Related Bankruptcy Cases**" means the cases of the Related Debtors currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which cases were commenced on the Petition Date and presently bear Case No. 8:17-bk-6563-CPM, Case No. 8:17-bk-6564-CPM; Case No. 8:17-bk-6572 and 8:17-bk-6576-CPM. The Related

Bankruptcy Cases are jointly administered with the cases filed by the Debtors under Case No. 8:17-bk-0652-CPM.

**"Related Debtors"** means Baywood, Gracewood, Harbourwood, and Laurellwood.

**"Reorganized Debtors"** means the Debtors following the occurrence of the Effective Date.

**"Schedules"** means, collectively, Schedules filed by the Debtors in the Bankruptcy Cases pursuant to Bankruptcy Rule 1007, as any of such Schedules has been or may hereafter be amended or supplemented from time to time.

**"Secured Claim"** means any Claim of a Creditor that is (a) secured in whole or in part, by a Lien (i) on Collateral and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under § 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estates' interests in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in an Estate's interest in such Collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

**"Secured Creditor"** means any Creditor holding a Secured Claim.

**"Secured Tax Claim"** means a Secured Claim of a Governmental Unit for Prepetition taxes.

**"Senior Care"** means Senior Care Group, Inc.

**"Senior Care Plan Payment"** means the quarterly sum of $100,000, plus any Diamond Payment, and any Transitions Payment received during such quarter.

**"Subsidiaries"** means Autumn Breeze, Deer Park, and Yancey.

**"The Home Association"** means The Bridges Nursing and Rehabilitation, LLC.

**"The Home Association Payment"** means the quarterly payments to be made by The Home Association in the following amounts: (i) $90,000 for the first four quarters following the Effective Date; (ii) $94,000 for the fifth through eighth quarters following the Effective Date; (iii) $100,000 for the ninth through twelfth quarters following the Effective Date; and $105,000 for all following quarters through the duration of the Plan.

**"Transitions"** means Red River Rehabilitation, Inc., d/b/a Transitions Rehabilitation.

"**Transitions Payment**" means the amount equal to six percent (6%) of all outpatient revenues generated by Transitions in excess of one million dollars ($1,000,000). None of the revenues generated by services provided to the Subsidiaries are included in the calculation of Transitions Payment.

"**Unimpaired**" refers to a Claim that is not Impaired.

"**United States Trustee**" means the Office of the United States Trustee for Region 21.

"**Unsecured Claim**" means any Claim which is not an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Tax Claim, or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under § 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estates' interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to § 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtors prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

"**Unsecured Creditor**" means any Creditor holding an Unsecured Claim.

"**Voting Deadline**" means the last day to file, with the Bankruptcy Court, a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

"**Voting Instructions**" means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

"**Yancey**" means Senior Care Group of Yancey, LLC.

2.1.1  Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2    **Rules of Construction**.

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form

13

or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to a Holder of a Claim includes that Entity's successors and assigns; and (j) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE
## EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND INSURED CLAIMS

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims and Priority Tax Claims is set forth below in this Article 2.

3.1    **Administrative Expense Claims**.

3.1.1    Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim (excluding Allowed Professional Administrative Expense Claims) shall be paid in Cash, in full, on or before the latest of (a) the Effective Date, (b) ten (10) days after the date such Administrative Expense Claim becomes an Allowed Claim, and (c) such later date as the Holder of such Allowed Administrative Claim may agree.

3.1.2    The Debtors shall be jointly and severally liable for all Allowed Administrative Expense Claims against each Debtor. Each Allowed Professional Administrative Expense Claim shall be paid a Pro Rata share of the Cash Contribution. Each Holder of an Allowed Professional Administrative Expense Claim shall receive its Pro Rata Share of Plan Distributions until Allowed Professional Administrative Expense Claims have been paid in full.

3.1.3    All fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date but not yet paid as of the Effective Date shall be paid to the United States Trustee on the Effective Date. Following the Effective Date, any such fees required pursuant to 28 U.S.C. § 1930(a)(6) arising or accruing from distributions shall be paid by the appropriate Reorganized Debtor.

3.1.4    All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Bankruptcy Cases but not yet paid as

of the Effective Date shall be paid by the appropriate Reorganized Debtors in accordance with contract terms or as may be otherwise agreed upon by both the Holder of such Allowed Administrative Expense Claim and the appropriate Reorganized Debtor.

3.2 **Priority Tax Claims**. Each Holder of an Allowed Priority Tax Claim shall receive payments of cash, in the full amount of such Allowed Priority Tax Claim, on the latest of (a) a date that is six (6) months after the Effective Date, (b) ten (10) days after such Priority Tax Claim becomes an Allowed Claim, and (c) such later date as the Holder of such Allowed Priority Tax Claim may agree.

3.3 **Insured Claims**.  After the Effective Date, and to the extent not previously provided for by an order of the Bankruptcy Court, and notwithstanding Sections 11.3 and 11.4 of the Plan, the automatic stay shall be terminated and the discharge injunction modified so that Holders of any Insured Claim may, to the extent allowed under applicable law, assert such Insured Claim against the applicable Reorganized Debtor(s) (where such applicable Reorganized Debtor(s) are named as defendant(s)), for the purpose of recovery against any insurance company that issued an insurance policy providing coverage for such Insured Claim, subject to the following:

3.3.1 If an Insured Claim is subject to a self-insured-retention whereby insurance coverage of such Insured Claim is in excess of an amount which is the responsibility of any Reorganized Debtor(s), before the automatic stay shall be terminated and the discharge injunction modified with respect to such Insured Claim, either (a) the Holder of such Insured Claim must file a notice with the Bankruptcy Court that such claimant has forever waived, discharged, and released such Insured Claim with respect to all amounts subject to the self-insured retention, such claimant has agreed not to seek recovery of the amount of the self-insured retention from any insurer or from any other entity, and that his or her proof of claim (if any has been filed) is withdrawn with prejudice, or in the alternative, (b) the part of the Insured Claim which is not insured must first be allowed as a general Unsecured Claim against the applicable Reorganized Debtor in accordance with this Plan or in accordance with section 3.3.4 of the Plan.  Such non-insured portion of the Insured Claim may only be allowed up to the amount of the self-insured-retention.

3.3.2  Upon request by any applicable insurer that provided coverage for any Insured Claim that is in excess of a self-insured-retention, the applicable Reorganized Debtor shall reasonably cooperate, at no out of pocket costs to the applicable Reorganized Debtor, with such insurer, including conferring with a designated representative of the insurer a reasonable time prior to consenting to the allowance of any such Insured Claim, and notifying such representative at the same time the Holder of such Insured Claim is notified, of the initial objection to such Insured Claim and of any subsequent court proceedings with respect to such claim.  Nothing impairs the insurer from objecting to any compromise, which shall be resolved by the Bankruptcy Court.  The applicable Reorganized Debtor shall not be required to seek Bankruptcy Court approval of such settlement.

3.3.3 Nothing in this Plan or any document adopted to implement the Plan shall be deemed to alter, waive or impair the legal, equitable or contractual rights, duties or obligations

15

of any insurer, or of any insured party or of any Holder of an Insured Claim with respect to applicable insurance coverage, or otherwise affect in any way, the claims, defenses, rights or causes of action that any insurer may have under the provisions, terms, conditions, defenses and/or exclusions contained in any applicable insurance policy, it being the intent of this Plan that the rights and duties of insurers shall be determined pursuant to their respective insurance policies and under applicable non-bankruptcy law.  For the avoidance of doubt, nothing in this Plan shall eliminate or impair any exclusion or precondition to coverage found in any policy of insurance.

3.3.4  Consistent with section 3.3.3 of the Plan, nothing in this Plan shall bar or delay, nor shall this Plan enhance, any pre-existing right of any Holder of an Insured Claim to pursue an action directly against an applicable insurer (where such applicable Insurer(s) may be named as defendant(s)), but only to the extent and only under the circumstances where such direct action is authorized and permitted by applicable law.

3.3.5  Any applicable insurance carrier is hereby authorized at any time to reach agreement with the Holder of any Insured Claim to settle such claim at no cost to the Reorganized Debtors, and the Reorganized Debtors' Estates and all insureds shall be deemed to have consented to such settlement and no approval of the Debtors or the Court shall be required. In the absence of any agreement, the Holder of the Insured Claim shall be entitled to prosecute its Insured Claim and the Reorganized Debtors and other parties retain all defenses to such Insured Claim.  The applicable insurance carrier is further authorized at any reasonable time prior to final distribution under this Plan, upon the consent of either the Bankruptcy Court or the Reorganized Debtors, to propose an agreement with the Holder of any Insured Claim to settle such claim where such proposal shall include a general Unsecured Claim up to the amount of the self-insured-retention, and upon such consent of the Reorganized Debtors, all insureds under the applicable policy shall be deemed to have consented to such settlement and no approval of the Bankruptcy Court shall be required if approved by the Reorganized Debtors.

## ARTICLE 4
## <u>DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS</u>

Pursuant to § 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.  A Claim or Interest (a) is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class.  Unless otherwise expressly stated, the Classes of Claims set forth below include Claims against each of the Debtors that qualify within the description of that Class.  To the extent any Class does not include any Allowed Claims, it shall be deemed stricken from this Plan and disregarded for purposes of voting. For purposes of the Plan, the Claims and Interests are classified as follows:

4.1    **<u>Class 1:  Priority Claims</u>**.

Class 1 consists of all Priority Claims excluding all Priority Tax Claims.

4.2    **<u>Class 2:  Secured Tax Claims</u>**.

Class 2 consists of the Secured Tax Claims.

4.3    **<u>Class 3:  Secured Claims</u>**.

Class 3 consists of all Secured Claims.

Class 3a:  Ally Secured Claim against Senior Care.

Class 3b:  McKesson Secured Claim against Senior Care and Key West.

4.4    **<u>Class 4:  AHCA Claims</u>**.

Class 4 consists of all Claims of AHCA.

4.5    **<u>Class  5:  Unsecured Claims</u>**.

Class 5 consists of all Unsecured Claims in the Bankruptcy Cases, as follows:

Class 5a:        Key West Unsecured Claims
Class 5b:        Senior Care Unsecured Claims
Class 5c:        The Home Association Unsecured Claims

4.6    **<u>Class 6:  Interests</u>**.

Class 6 consists of all Interests, as follows:

Class 6a:        Key West Interests
Class 6b:        Senior Care Interests
Class 6c:        The Home Association Interests

### ARTICLE 5
### TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Claims and Interests shall be treated under the Plan in the manner set forth in this Article 5.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Interests.

5.1    **Unclassified Claims**.

Holders of Allowed Administrative Expense Claims, Allowed Insured Claims, and Allowed Priority Tax Claims shall receive the treatment set forth in Article 3 of the Plan.

5.2    **Class 1:  Priority Claims**.

5.2.1    Each Holder of an Allowed Priority Claim in Class 1 shall receive payments of Cash, in the full amount of such Allowed Priority Claim, on (a) the Effective Date, (b) ten (10) days after the date such Claim becomes an Allowed Claim, and (c) such later date as the Holder of such Allowed Priority Claim may agree.

5.2.2    Class 1 is Unimpaired.  Class 1 is not entitled to vote to accept or reject the Plan.

5.3    **Class 2:  Secured Tax Claims**.

5.3.1    Allowed Secured Tax Claims shall retain any Liens securing such Allowed Secured Tax Claim.

5.3.2    Allowed Secured Tax Claims shall be paid over five (5) years from the Effective Date together with interest at the rate of six percent (6%).

5.3.3    Class 2 is Impaired by the Plan.  Class 2 is entitled to vote to accept or reject the Plan.

5.4    **Class 3a:  Ally Secured Claims**.

5.4.1    Class 3a consists of all Secured Claims of Ally.

5.4.2    Senior Care shall return the Collateral securing the Class 3a Secured Claim to Ally in full satisfaction of the Class 3a Secured Claims.

5.4.3    Class 3a is Unimpaired and not entitled to vote to accept or reject the Plan.

5.5    **Class 3b:  McKesson Secured Claim**.

5.5.1    Class 3b consists of all Secured Claims of McKesson.

5.5.2    The Allowed Secured Claim, if any, shall be paid over five (5) years from the Effective Date by Key West together with interest at the rate of six percent (6%).

5.5.3  Class 3b is Impaired by the Plan.  Class 3b is entitled to vote to accept or reject the Plan.

5.6   **Class 4:  AHCA**.

5.6.1  Class 4 consists of all Claims of AHCA.

5.6.2  The Home Association shall pay AHCA the sum of $1,639,801.45 by making quarterly payments of $75,000 until AHCA has received the sum of $1,639,801.45 in full satisfaction of AHCA Claims.

5.6.3  Class 4 is Impaired by the Plan.  Class 4 is entitled to vote to accept or reject the Plan.

5.7   **Class 5a:  Key West Unsecured Claims**.

5.7.1  Class 5a consists of all Allowed Unsecured Claims against Key West in the Key West Bankruptcy Case.

5.7.2  Holders of Class 5a Claims shall receive their Pro Rata Share of the Key West Plan Payment.  The distributions shall continue until Allowed Class 5a Claims have been paid in full or four years after the Effective Date.

5.7.3  Class 5a is Impaired by the Plan.  Each Holder of an Unsecured Claim in Class 5a is entitled to vote to accept or reject the Plan.

5.8   **Class 5b:  Senior Care Unsecured Claims**.

5.8.1  Class 5b consists of all Allowed Unsecured Claims against Senior Care in the Senior Care Bankruptcy Case.

5.8.2  Holders of Class 5b Claims shall receive their Pro Rata Share of the Senior Care Plan Payment.  Such payments shall continue for four years after the Effective Date.

5.8.3  Class 5b is Impaired by the Plan.  Each Holder of an Unsecured Claim in Class 5b is entitled to vote to accept or reject the Plan.

5.9   **Class 5c:  The Home Association Unsecured Claims**.

5.9.1  Class 5c consists of all Allowed Unsecured Claims against The Home Association in The Home Association Bankruptcy Case.

19

5.9.2   Holders of Class 5c Claims shall receive their Pro Rata Share of The Home Association Plan Payment after the AHCA Claim has been paid in accordance with the Plan. Such payments shall be made for four (4) years following the satisfaction of the AHCA Claim.

5.9.3   Class 5c is Impaired by the Plan.  Each Holder of an Unsecured Claim in Class 5c is entitled to vote to accept or reject the Plan.

5.10    **Class 6a:  Key West Interests**.

5.10.1   Class 6a consists of all Interests in Key West.

5.10.2   The Holders of Interests in Key West shall retain their Interests which shall not be affected by the Plan.  Holders of Interests in Key West shall not be entitled to any Distributions until Holders of Allowed Unsecured Claims have received all payments provided for under the Plan.

5.10.3   Class 6a is Impaired by the Plan.  The Holders of the Class 6a Interests are entitled to vote to accept or reject the Plan.

5.11    **Class 6b:  Senior Care Interests**

5.11.1   Class 6b consists of all Interests in Senior Care.

5.11.2   The Holders of Interests in Senior Care shall retain their Interests which shall not be affected by the Plan.  Holders of Interests in Senior Care shall not be entitled to any Distributions until Holders of Allowed Unsecured Claims have received all payments provided for under the Plan.

5.11.3   Class 6b is Impaired by the Plan.  The Holders of the Class 6b Interests are entitled to vote to accept or reject the Plan.

5.12    **Class 6c:  The Home Association Interests**

5.12.1   Class 6c consists of all Interests in The Home Association.

5.12.2   The Holders of Interests in the Home Association shall retain their Interests which shall not be affected by the Plan.  Holders of Interests in The Home Association shall not be entitled to any Distributions until Holders of Allowed Unsecured Claims have received all payments provided for under the Plan.

5.12.3   Class 6c is Impaired by the Plan.  The Holders of the Class 6c Interests are entitled to vote to accept or reject the Plan.

## ARTICLE 6
## ACCEPTANCE OR REJECTION OF THE PLAN

6.1    **Each Impaired Class Entitled to Vote Separately**.

Except as otherwise provided in Article 6.3, the Holders of Claims or Interests in each Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.

6.2    **Acceptance by Impaired Classes**.

Only a Holder of an Allowed Claim in an Impaired Class is entitled to vote to accept or reject the Plan.  Pursuant to § 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to § 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  If a Holder of an Allowed Claim holds more than one Allowed Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Allowed Claim for purposes of determining the number of Allowed Claims in such Class voting on the Plan.

6.3    **Presumed Acceptance of Plan by Unimpaired Classes**.

Pursuant to § 1126(f) of the Bankruptcy Code, any Unimpaired Class and the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan.  Accordingly, votes of Holders of Claims in such Classes are not being solicited by the Debtors.  Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtors, the Reorganized Debtors, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

6.4    **Impairment Controversies**.

If a controversy arises as to whether any Claim or any Class of Claims is Impaired under the Plan, such Claim or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or a particular Class of Claims under the Plan.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    **Rejection of Executory Contracts and Unexpired Leases**.

Except as set forth on Exhibit "A" (the **"Assumed Leases"**), all executory contracts and

unexpired leases that currently exist between any Debtor and any other Person or Entity that have not been rejected by the Debtors with the Bankruptcy Court's approval on or prior to the Effective Date, shall be deemed rejected by the Debtors as of the Confirmation Date (collectively, the "**Rejected Contracts**"); provided, however, the Debtors reserve the right, on or prior to the Confirmation Date, to assume (or assume and assign) any executory contract or unexpired lease by providing notice of such assumption to the party to the executory contracts and unexpired leases affected thereby.

7.2    **Inclusiveness**.

Unless otherwise specified, each executory contract and unexpired lease that is rejected or assumed shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is specifically referenced in this Plan or in a notice of assumption provided under this Plan.

7.3    **Claims under Rejected Executory Contracts and Unexpired Leases**.

7.3.1 Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtors and the Reorganized Debtors. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be (a) any deadline ordered by the Bankruptcy Court, or (b) in the absence of any such order, the Voting Deadline. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

7.3.2    All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in the applicable Bankruptcy Case. Any such Claims that become Disputed Claims shall be Disputed Claims for purposes of administration of Distributions under the Plan to Holders of Allowed Unsecured Claims in the applicable Bankruptcy Case.

## ARTICLE 8
## MEANS OF IMPLEMENTATION OF THE PLAN

8.1    **General Overview of the Plan**.

The Plan provides for distributions to Holders of Allowed Administrative Claims from available Cash and the Cash Contribution.  To the extent that Allowed Administrative Claims are not paid on the Effective Date, the balance of amounts owed will be paid over time.  Creditors will receive payment over time in the manner set forth in the Plan from the cash flow generated by continuing operations.

8.2    **Effective Date Transactions**.

The Debtors shall carry out their other Effective Date responsibilities under the Plan, including the execution and delivery of all documentation contemplated by the Plan.

8.3    **Corporate Existence**.

The Debtors will continue to exist after the Effective Date as a corporation, with all of the powers of a not for profit corporation under applicable law in the State of Florida and pursuant to its articles of organization and bylaws or other organizational documents in effect prior to the Effective Date, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

8.4    **Management of the Reorganized Debtor Following the Effective Date**.

8.4.1   On and after the Effective Date, the Debtors' operations shall be the responsibility of the Reorganized Debtors and current management shall manage the Reorganized Debtors.

8.4.2   The Reorganized Debtors shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

8.5    **Corporate Action**.

All matters provided for under the Plan involving the corporate structure of the Debtors, or any corporate action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the director(s) of the Debtors.

8.6    **Section 1146 Exemption**.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of transfer

23

pursuant to, in implementation of or as contemplated by the Plan, or the vesting, re-vesting, transfer or sale of any Assets of, by or in the Debtors, their Estates, or the real estate pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

8.7    **Preservation of Causes of Action**.

8.7.1  On the Effective Date, the Causes of Action shall be vested exclusively in the Reorganized Debtors, except to the extent a Creditor or other third party has, prior to the Effective Date, been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court.  The Reorganized Debtors will have the rights, powers, and privileges to pursue, not pursue, settle, release, or enforce any Causes of Action without seeking approval from the Bankruptcy Court.  The Debtors are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action.  For purposes of providing notice, the Debtors state that any director, officer, member or employee of any Debtor and any Person that engaged in business or other transactions with the Debtors Prepetition or that received payments from the Debtors Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any Person or Entity, including the insurers under any of the Debtors' insurance policies.

8.7.2  No Creditor or other Person should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action.  No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action.  ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE REORGANIZED DEBTORS.  Creditors are advised that legal rights, claims and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtors to release such claims.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors, or the Reorganized Debtors do not possess or does not intend to prosecute a particular claim or cause of action if a particular Creditor votes to accept the Plan.  It is the expressed intention of the

Plan to preserve rights, Claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of the Reorganized Debtors and the Debtors' Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement; nor shall the Debtors, as a result of such failure be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action, except as expressly provided otherwise.

8.7.3  The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Reorganized Debtors will have substantially the same rights that the Debtors would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

8.8    **Effectuating Documents; Further Transactions**.

Following the Effective Date, the Debtors as the Reorganized Debtors, shall be authorized to, and shall, execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

## ARTICLE 9
## PROVISIONS GOVERNING DISTRIBUTIONS

9.1    **Distributions**.

The Reorganized Debtors shall assume sole responsibility and liability for any Allowed but unpaid Claims.

9.2    **Determination of Claims**.

9.2.1  From and after the Effective Date, the Reorganized Debtors shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed on or before the Claims Objection Deadline, and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance

to file late Unsecured Claims. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as an Unsecured Claim in the applicable Bankruptcy Case. Insured Claims that are not satisfied in full by proceeds of applicable insurance policies shall be allowed or disallowed in accordance with this section 9.2.1. The Reorganized Debtors shall be authorized to seek withdrawal of the reference from the district court if necessary to liquidate or estimate any personal injury tort or wrongful death Claim pursuant to 28 U.S.C. § 157(b)(2)(5) or any similar law or rule that limits the Bankruptcy Court's jurisdiction to adjudicate such Claims. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the latest of (a) the Claims Objection Deadline; (b) ninety (90) days following the Effective Date, (c) the date sixty (60) days after the Reorganized Debtors receive actual notice of the filing of such Claim, or (d) the date sixty (60) days after the Reorganized Debtors receive actual notice that an Insured Claim has not been satisfied in full by proceeds of applicable insurance policies.

9.2.2  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Reorganized Debtors, as applicable, effect service in any of the following manners:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

9.2.3  Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution. The Debtors or the Reorganized Debtors, as the case may be, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors, as the case may be, previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as the case may be, may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court

giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

9.3     **Unclaimed Distributions**.

9.3.1   If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then the Reorganized Debtors shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.3.2   If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtors due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtors as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

9.3.3   Any unclaimed check for a Distribution as described in Articles 9.3.1 and 9.3.2 above shall become the Property of the Reorganized Debtors to be distributed to the Holders of Allowed Claims pursuant to the terms of the Plan.

9.4     **Transfer of Claim**.

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Reorganized Debtors in writing of such transfer and provide sufficient written evidence of such transfer.  The Reorganized Debtors shall be entitled to assume that no transfer of any Claim has been made by any Holder on or after the Effective Date unless and until the Reorganized Debtors shall have received written notice to the contrary.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in any notice of transfer, the Reorganized Debtors shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

9.5     **One Distribution per Holder**.

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distributions hereunder, and only one Distribution shall be made with respect to the single

aggregated Claim.

9.6    **Effect of Pre-Confirmation Distributions**.

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtors to such Holder hereunder.

9.7    **No Interest on Claims**.

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual or payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Distribution is made when and if such Disputed Claim becomes an Allowed Claim.

9.8    **Compliance with Tax Requirements**.

In connection with the Plan, the Debtors and the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

## ARTICLE 10
## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

10.1    **Condition Precedent to Confirmation of the Plan**.

10.1.1  The following is a condition precedent to Confirmation of the Plan, which condition may be waived by the Debtors:

10.1.1.1    The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

10.2    **Condition Precedent to the Effective Date**.

10.2.1  The Plan shall not be consummated and the Effective Date shall not occur unless

the following conditions have been satisfied following the Confirmation Date or waived by the Debtors:

> 10.2.1.1    The Confirmation Order shall be a Final Order.

**10.3    Notice of the Effective Date**.

Within ten (10) Business Days after the Effective Date, the Reorganized Debtors shall mail or cause to be mailed to all Holders of Claims and Interests, and all parties set forth on the Court's mailing matrix, a notice that informs such parties of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Debtors deem to be appropriate.

## ARTICLE 11
## DISCHARGE, EXCULPATION FROM LIABILITY, AND GENERAL INJUNCTION

**11.1    Discharge of Claims**.

As the factors set forth in § 1141(d)(3) of the Bankruptcy Code are present in the Bankruptcy Case, based on the facts and circumstances of the Bankruptcy Case, confirmation of the Plan shall not result in a discharge of the Debtors within the meaning of § 1141 of the Bankruptcy Code.

**11.2    Exculpation from Liability**.

**The Debtors and their agents, officers, directors, Postpetition directors and officers; the Professionals for the Debtors (acting in such capacity); the Committee and its members; and the Professionals (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Cases, in the case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party or breach of any contract or any fiduciary duty. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Cases. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 11.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under § 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of**

**any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan.  This exculpation from liability provision is an integral part of the Plan and is essential to its implementation**.

11.3    **General Injunction**.

**Pursuant to §§ 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is treated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such Claims, Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan:  (a) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors, or their Assets, or their Estates; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, their Assets, or their Estates; (c) creating, perfecting or enforcing any Lien or encumbrance against Debtors, the Reorganized Debtors, or their Assets or their Estates; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors, the Reorganized Debtors, or their Estates; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtors or the Reorganized Debtors, as applicable or their Estates under the Plan and the documents executed in connection therewith.  The Debtors or the Reorganized Debtors as applicable shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation**.

11.4    **Term of Certain Injunctions and Automatic Stay**.

11.4.1   All injunctions or automatic stays provided for in the Bankruptcy Case pursuant to §§ 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

11.4.2 With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) in which any  Debtor was listed as a defendant and that seek to establish such Debtor's liability on Prepetition Claims asserted therein and that are stayed pursuant to § 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Reorganized Debtors affirmatively elect to have such Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective

30

Date, and the automatic stay shall continue in effect, unless the Reorganized Debtors affirmatively elects to have the automatic stay lifted and to have such Debtor's liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Reorganized Debtors as provided herein.  To be clear, any lawsuits pending in courts in any jurisdiction in which the Debtors, or the Reorganized Debtors, as applicable, are a plaintiff or seek to establish a claim against another Person are not subject to this Article shall not be deemed dismissed and are Causes of Actions being vested in the Reorganized Debtors under this Plan.

11.5    **No Liability for Tax Claims**.

Unless a taxing Governmental Unit has asserted a Claim against the Debtors before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtors, or the Reorganized Debtors, as applicable, or their officers, directors, or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, any of their Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE 12
## RETENTION OF JURISDICTION

### 12.1    General Retention.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

### 12.2    Specific Purposes.

In addition to the general retention of jurisdiction set forth in Article 12.1, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case for the following specific purposes:

12.2.1  to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims;

12.2.2  to determine any and all cases, controversies, suits or disputes arising under or relating to the Bankruptcy Cases, the Plan or the Confirmation Order (including regarding the effect of any discharge, exculpation, limitation of liability, or injunction provisions provided for

herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the Plan have been satisfied);

12.2.3 to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under § 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Cases; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after the Effective Date of the Plan unless an objection to such fees and expenses has been made by the Reorganized Debtors;

12.2.4 to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection of executory contracts or unexpired leases to which the Debtors or the Reorganized Debtors as applicable are a party or with respect to which the Debtors or the Reorganized Debtors as applicable may be liable, and to determine the allowance of any Claims resulting from the rejection thereof;

12.2.5 to determine any and all motions, applications, adversary proceedings, contested or litigated matters, and any other matters involving the Debtors, or the Reorganized Debtors, as applicable, commenced in connection with, or arising during, the Bankruptcy Case and pending on the Effective Date, including approval of proposed settlements thereof;

12.2.6 to enforce, interpret and administer the terms and provisions of the Plan;

12.2.7 to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

12.2.8 to consider and act on the compromise and settlement of any Claim against the Debtors or the Estates;

12.2.9 to assure the performance by the Debtors or the Reorganized Debtors of their obligations under the Plan;

12.2.10 to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

12.2.11 to enforce all orders, judgments, injunctions and rulings entered in connection with the Bankruptcy Case;

12.2.12 to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and

other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.2.13  to determine all questions and disputes regarding title to the assets of the Debtors, or the Reorganized Debtors;

12.2.14  to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors or the Reorganized Debtors as applicable arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

12.2.15  to resolve any determinations which may be requested by the Debtors, or the Reorganized Debtors, as applicable of any unpaid or potential tax liability or any matters relating thereto under §§ 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

12.2.16  to resolve any disputes concerning any exculpation of or limitation of liability as to a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

12.2.17  to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

12.2.18  to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

12.2.19  to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, or the Confirmation Order;

12.2.20  to enter such orders as are necessary to implement and enforce the injunctions described herein;

12.2.21  to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

12.2.22  to determine any and all matters, disputes and proceedings relating to the Purchase Agreement, whether arising before or after the Effective Date;

12.2.23  to enter the Final Decree; and

12.2.24  to enter an order reopening the Bankruptcy Cases.

# ARTICLE 13
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

**13.1    Modification of Plan**.

13.1.1 The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

13.1.2 After the entry of the Confirmation Order, the Debtors (prior to the Effective Date), may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtors obtain Bankruptcy Court approval for such modification, after notice to the Local 1007-2 Parties in Interest Matrix and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims under the Plan.

13.1.3 After the Effective Date and before substantial consummation of the Plan, the Reorganized Debtors may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Reorganized Debtors obtain Bankruptcy Court approval for such modification, after notice to the Local 1007-2 Parties in Interest Matrix and a hearing; (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims actually voting in each Class adversely affected by such modification; and (d) the Reorganized Debtors comply with § 1125 of the Bankruptcy Code with respect to the Plan, as modified.

**13.2    Confirmation Over Objections**.

In the event any Impaired Class of Claims votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Article 13.1, the Debtors hereby request, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by restructuring the treatment of any Class on terms consistent with § 1129(b)(2)(A) or (B) of the Bankruptcy Code.  The Debtors may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing.  No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims unless the Bankruptcy Court shall require otherwise.  Notwithstanding any provision of the Plan to the contrary, the Debtors reserve any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

**14.1** **No Admissions**.

The Plan provides for the resolution, settlement and compromise of Claims against and Interests in the Debtors.  Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtors in any manner prior to the Effective Date.

**14.2** **Revocation or Withdrawal of the Plan**.

The Debtors reserve the right to revoke or withdraw the Plan prior to a final ruling at the Confirmation Hearing.  If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Interests in, the Debtors or any other Person, or (b) prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**14.3** **Further Authorization**.

Each of the Debtors and the Reorganized Debtor agree, and are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan and the Effective Date transactions.

**14.4** **Headings**.

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**14.5** **Notices**.

All notices, requests or other communications in connection with, or required to be served by, the Plan shall be in writing and shall be sent by United States first class mail, postage prepaid, or by overnight delivery by a recognized courier service, and addressed as follows: (i) if to the Debtors, to R. Daniel Vaughan, 1240 Marbella Plaza Drive, Tampa, Florida  33619, with a copy to Scott A. Stichter, Esquire, Stichter, Riedel, Blain & Postler, P.A., 110 East Madison Street, Suite 200, Tampa, Florida 33602.  Any of the parties listed above may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court.

**14.6    Governing Law**.

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof.

**14.7    Limitation on Allowance**.

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid under the Plan with respect to any Claim or Interest except as otherwise specified in the Plan.

**14.8    Estimated Claims**.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**14.9    Consent to Jurisdiction**.

14.9.1  Upon any default under the Plan, the Reorganized Debtors consent to the jurisdiction of the Bankruptcy Court and agree that the Bankruptcy Court shall be the exclusive forum for all proceedings relating to any such default.

14.9.2  By accepting any Distribution under or in connection with the Plan, by filing any Proof of Claim, by filing any request for allowance or payment of an Administrative Expense Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Cases or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Cases, Creditors, Holders of Interests and other Persons, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Debtors, the Plan or the Bankruptcy Cases, including the matters and purposes set forth in Article 12 of the Plan.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

**14.10   Setoffs**.

Subject to the limitations provided in § 553 of the Bankruptcy Code, the Debtors may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim

hereunder shall constitute a waiver or release by the Debtors of any such claim that the Debtors may have against the Holder of such Claim.

**14.11    Successors and Assigns**.

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**14.12    No Interest**.

Except as expressly stated in the Plan, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.

**14.13    Modification of Payment Terms**.

The Reorganized Debtors shall have the right to modify the treatment of any Allowed Claim at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**14.14    Entire Agreement**.

The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

**14.15    Severability of Plan Provisions**.

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**14.16  Controlling Document**.

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement  entered into between the Debtors and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

**14.17  Computation of Time**.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**14.18  No Liability for Solicitation**.

Pursuant to § 1125(e) of the Bankruptcy Code, any Person that solicits acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

**14.19  Dissolution of Committee as to Debtors**.

14.19.1      The Committee with respect to the Debtors shall continue in existence until the Effective Date, and until the Effective Date shall continue to exercise those powers and perform those duties specified in Section 1103 of the Bankruptcy Code, and shall perform such other duties as it may have been assigned by the Bankruptcy Court prior to the Effective Date as to the Debtors.

14.19.2      On the Effective Date, the Committee in the Debtors' Bankruptcy Cases shall be dissolved and its members shall be deemed released of all of their duties, responsibilities and obligations in connection with the Bankruptcy Cases or the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate.

14.19.3      Notwithstanding anything in this Section 14.19, the Committee in the Debtors' Bankruptcy Cases shall continue to have standing and a right to be heard following dissolution of the Committee solely with respect to:  (a) Professional Administrative Expense Claims, and (b) any appeals of the Confirmation Order.

[Remainder of page intentionally left blank]

Tampa, Florida
Dated as of March 6, 2019

SENIOR CARE GROUP, INC.

By: _____

Its: President

Date: 3/6/19

KEY WEST HEALTH AND REHABILITATION
CENTER, LLC

By: _____

Its: President

Date: 3/6/19

THE BRIDGES NURSING AND REHABILITATION,
LLC

By: _____

Its: President

Date: 3/6/19

39

/s/  *Scott A. Stichter*

Scott A. Stichter (FBN 0710679)
Stichter, Riedel, Blain & Postler, P.A.
110 East Madison Street, Suite 200
Tampa, Florida  33602
sstichter@srbp.com
(813) 229-0144 – Phone
(813) 229-1811 – Fax
Attorneys for Debtors

13506.2146304v4

40